# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AUTOMOTIVE DENT TECHNOLOGY, INC., doing business as ADT and as ADVANCE DENT TECHNOLOGY, | ) ) ) ) ) | |
| Plaintiff, | ) | 1:16CV1003 |
| v. | ) ) | |
| JOSEPH WARREN, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Joseph Warren's Motion to Dismiss for Failure to State a Claim ("Motion") [Doc. #8] pursuant to North Carolina General Statutes § 105-230 and § 55-15-02 and Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, Mr. Warren's Motion will be granted and Plaintiff Automotive Dent Technology, Inc.'s ("ADT") second, third, fourth, fifth, and sixth claims for relief will be dismissed. However, as Mr. Warren did not move to dismiss ADT's first claim for relief, breach of contract, that claim remains.

ADT, a Delaware Corporation with its principal office in Forsyth County, North Carolina, filed the present action in response to alleged wrongdoings by Mr. Warren, an ADT officer and shareholder. (Compl. [Doc. #1] ¶¶ 1, 2.) ADT provides repair and restoration services to automobile dealerships and other businesses with inventories of cars when such inventory is damaged by adverse

weather conditions (like hail).  (Id. ¶¶ 1, 8.)  According to the Complaint, in March 2014, ADT contracted with Mr. Warren to secure a national vendor agreement for ADT with Enterprise Holdings ("Enterprise").  (Id. ¶ 9.)  In exchange, Mr. Warren would receive one third ownership of ADT, be employed as an officer of the corporation, and receive one third of the net profits.  (Id. ¶¶ 10, 11.)  In addition to securing the vendor agreement with Enterprise, Mr. Warren's contractual duties included "developing contacts, servicing contracts, negotiating service agreements with new clients, and generally performing work consistent with that expected of an officer employed by a small corporation."  (Id. ¶ 11.)

ADT asserts that Mr. Warren breached his employment contract by: (1) forming one or more corporations or limited liability companies which were in direct competition with ADT; (2) diverting and embezzling payments on accounts due to ADT by instructing account debtors to make such payments to one or more corporations or limited liability companies which were in direct competition with ADT; and (3) knowingly and maliciously diverting accounts, customers, and corporate opportunities away from ADT and toward one or more corporations or limited liability companies which were in direct competition with ADT.  (Id. ¶ 12.)

On July 27, 2016, ADT filed the present action alleging (1) breach of contract, (2) interference with contractual relationships, (3) interference with prospective economic advantages, and (4) breach of fiduciary duty, and asking for (5) the imposition of a constructive trust and (6) punitive damages.  (Id. ¶¶ 7-32.) In response, Mr. Warren moved to dismiss claims two through six pursuant to

North Carolina General Statutes § 105-230 and § 55-15-02 and Federal Rule of Civil Procedure 12(b)(6). [Docs. #8, 9, 11.]

Mr. Warren's first argument in support of dismissal is that ADT has no North Carolina Certificate of Authority and, thus, pursuant to North Carolina General Statute § 105-230, "all acts on which its claims are based are invalid." (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") [Doc. #39] at 3.)

North Carolina General Statute § 105-230 states

> (a) If a corporation or a limited liability company fails to file any report or return or to pay any tax or fee required by this Subchapter for 90 days after it is due, the Secretary shall inform the Secretary of State of this failure. The Secretary of State shall suspend the articles of incorporation, articles of organization, or certificate of authority, as appropriate, of the corporation or limited liability company. The Secretary of State shall immediately notify by mail every domestic or foreign corporation or limited liability company so suspended of its suspension. The powers, privileges, and franchises conferred upon the corporation or limited liability company by the articles of incorporation, the articles of organization, or the certificate of authority terminate upon suspension.
>
> (b) Any act performed or attempted to be performed during the period of suspension is invalid and of no effect, unless the Secretary of State reinstates the corporation or limited liability company pursuant to G.S. 105-232.

In support of his argument, Mr. Warren relies on Ben Johnson Homes, Inc. v. Watkins, 541 S.E.2d 769, 771 (N.C. Ct. App. 2001). However, the facts in Ben Johnson are distinguishable from the facts here. In that case,

> [Ben Johnson Homes, Inc.] entered into the contract with Defendant and performed that contract <u>at a time when its certificate of authority was in a state of suspension</u>. Thus, the contract and any rights, including claims based in equity (i.e., claims based on quantum meruit), arising under that contract are of no force and effect and are

3

not enforceable.

541 S.E.2d at 771 (emphasis added). Presently, unlike in Ben Johnson, there is nothing before the Court showing that ADT had a certificate of authority at the time it entered into the contract with Mr. Warren, much less that any such certificate was suspended at the time of contracting. Therefore, North Carolina General Statute § 105-230 does not apply here. And even if the statute did apply, it is not clear that ADT would be barred from pursuing the present action. See, e.g., Raleigh Swimming Pool Co. v. Wake Forest Country Club, 182 S.E.2d 273, 274 (N.C. Ct. App. 1971) (holding that even after charter suspension, N.C. Gen. Stat. § 105-230 does not deprive a corporation of "the incidental powers necessary to its survival; the power to protect its property in a court of law, either by assertion or defense of right").

Mr. Warren next argues that this action should be dismissed pursuant to North Carolina General Statute § 55-15-02, because ADT is "not registered to do business in North Carolina." (Def.'s Br. at 9.) North Carolina General Statute § 55-15-02 addresses the consequences of transacting business without authority in North Carolina. Specifically, North Carolina General Statute § 55-15-02 states

> (a) No foreign corporation transacting business in this State without permission obtained through a certificate of authority under this Chapter or through domestication under prior acts shall be permitted to maintain any action or proceeding in any court of this State unless the foreign corporation has obtained a certificate of authority prior to trial.

In Ben Johnson, the North Carolina Court of Appeals addressed a similar

4

argument to the one Mr. Warren makes here.

> Although there is a requirement for all foreign corporations to obtain a certificate of authority prior to doing business in this State, "the failure . . . to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this State." N.C.G.S. § 55-15-02(e) (1999). Prior to the trial of a claim asserted by a foreign corporation without a certificate of authority, however, the corporation must first obtain a certificate of authority. N.C.G.S. § 55-15-02(a) (1999).

541 S.E.2d at 771 n.2. While ADT did not allege that it was registered to do business in North Carolina at the time it entered into the contract with Mr. Warren, it received its Certificate of Authority from the state of North Carolina on September 28, 2016, prior to any trial of its claims. (Ex. D[1], Certificate of Authority [Doc. #10-1] at 7.) Accordingly, North Carolina General Statute § 55-15-02 does not bar ADT's lawsuit.

Mr. Warren also moves to dismiss five of ADT's six claims (interference with contractual relationships, interference with prospective economic advantages, breach of fiduciary duty, constructive trust, and punitive damages) pursuant to Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a

---

[1] ADT presented this document in its Brief In Opposition of the Motion to Dismiss. In addressing a dismissal motion, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "[A] court may properly take judicial notice of matters of public record." Goldfarb v. Mayor and City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015). The Certificate of Authority is a public record and neither party disputes its authenticity.

5

complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Mr. Warren first moves to dismiss ADT's claims of tortious interference with contractual relationships and tortious interference with prospective economic advantages. In North Carolina, the elements of tortious interference with contractual relationships are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) [the] defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

RLM Commc'n, Inc. v. Tuschen, 66 F. Supp. 3d 681, 694 (E.D.N.C. 2014) (citing Embree Const. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992)). The

6

purpose of a claim for wrongful interference with contract is to afford relief "against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party." Childress v. Abeles, 84 S.E.2d 176, 181 (N.C. 1954).

ADT alleges that: (1) As an employee and officer of the corporation, Mr. Warren had actual knowledge of accounts and contracts ADT had with various entities and individuals, and (2) without justification or excuse, Mr. Warren willfully and maliciously interfered with ADT's contractual relationships with its customers in one or more "particulars." (Compl. ¶¶ 15, 16, 19, 20.) Specifically, ADT alleges that Mr. Warren:

- A. secretly formed one or more corporations or limited liability companies which were in direct competition with ADT;

- B. knowingly and maliciously diverted and embezzled payments on accounts due to ADT by instructing account debtors to make such payments to one or more corporations or limited liability companies which were in direct competition with ADT;

- C. knowingly and maliciously diverted accounts, customers, and corporate opportunities away from ADT and toward one or more corporations or limited liability companies which were in direct competition with ADT; and

- D. falsely represented to ADT customers that the corporation had begun doing business under the name(s) of one or more of the corporations and limited liability companies formed by Mr. Warren.

(Id. ¶¶ 16, 20.)

Mr. Warren argues that ADT has failed to plead several essential elements of the tortious interference with contractual relationships claim. Specifically, Mr.

7

Warren asserts that ADT does not identify any valid contract that was disturbed nor any contracts that "were breached or not performed because of defendant's actions," and has not plead any actual damages. (Def.'s Br. at 7, 8.)

The Court agrees with Mr. Warren. With its allegations, ADT has not identified any contract it had with any third party much less one that Mr. Warren induced a third party not to perform, nor has it alleged any damage as a result. As such, the Complaint is void of any facts which could plausibly be read to state a claim for tortious interference with contractual relationships and that claim will be dismissed.

> A claim for tortious interference with prospective economic advantages
>
> arise[s] when a party interferes with a business relationship by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.

Beverage Sys. of the Carolinas, LLC v. Assoc. Beverage Repair, LLC, 784 S.E.2d 457, 463 (N.C. 2016) (internal citations and quotations omitted). "However, a plaintiff's mere expectation of a continuing business relationship is insufficient to establish such a claim. Instead, a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention." Id.

ADT relies on the same allegations asserted for its tortious interference with contractual relationship claim in support of its tortious interference with prospective economic advantages. Mr. Warren argues that ADT has not alleged

8

that but for defendant's alleged actions, it would have entered any contract and does not specifically identify any future contracts or prospective business relationships it lost because of Mr. Warren's conduct. According to Mr. Warren, ADT "generally alleges that defendant competed with plaintiff, diverted unspecified payments from plaintiff, diverted unspecified accounts from plaintiff, and made false representations to unspecified customers." (Id. at 9-10.)

With respect to this claim, ADT has not identified any contract into which it was going to enter but for Mr. Warren's interference, nor has it alleged any damages as a result. Accordingly, ADT has failed to state a claim for tortious interference with prospective economic advantages and this claim will be dismissed.

Mr. Warren next challenges the sufficiency of ADT's breach of fiduciary duty claim. Both parties agree that the internal affairs doctrine directs that this claim is subject to the law of Delaware, the state where ADT is incorporated. See Bluebird Corp. v. Aubin, 657 S.E.2d 55, 63 (N.C. Ct. App. 2008) (holding that, pursuant to the internal affairs doctrine, the North Carolina court correctly applied New York law in a breach of fiduciary duty claim against a New York corporation sued in North Carolina). Under Delaware law,

> A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty.

Beard Res., Inc. v. Kates, 8 A.3d 573, 601 (Del. Ch. 2010). In support of its breach of fiduciary duty claim, ADT asserts the same facts it did for its tortious

9

interference claims, but additionally alleges that "[a]s an employee and officer of the corporation, Mr. Warren owed ADT a duty of loyalty as a fiduciary." (Compl. ¶ 23.) In response, Mr. Warren argues that ADT has not alleged what position Mr. Warren held as an officer and that under Delaware law, "to the extent that plaintiff's breach of fiduciary duty claim is based on defendant's employment with plaintiff, that claim is foreclosed by plaintiff's claim for breach of contract." (Def.'s Br. at 10-12.) Like the previous claims, ADT has failed to state a claim upon which relief can be granted. ADT has not asserted sufficient facts for the Court to determine if Mr. Warren owed ADT any duty, nor, if so, the scope of it or how Mr. Warren breached any such duty. Other than generalized claims of alleged behavior, the Complaint is void of any facts to support a breach of duty claim. Accordingly, this claim will be dismissed.

Mr. Warren next challenges ADT's final two claims which relate to the protection of assets and damages – (1) the request for the imposition of a constructive trust in claim five and (2) the request for punitive damages in claim six. A constructive trust is an equitable remedy and courts have great leeway in imposing one. See Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 15 (1971) ("[T]he scope of a district court's equitable powers . . . is broad.") However, when "[a] plaintiff's complaint denominates a claim for constructive trust, a claim for constructive trust is properly denominated as a remedy for a claim of unjust enrichment." WJ Glob. LLC v. Farrell, 941 F. Supp. 2d 688, 693 (E.D.N.C. 2013) (citing Embree Const. Grp., 411 S.E.2d 916, n.3 (N.C. 1992)). In

support of its claim, ADT alleges that "[Mr. Warren] converted, embezzled, and misappropriated substantial sums which belonged to and which were due to be paid to [ADT]." (Compl. ¶ 27.) On these allegations, a constructive trust is not an appropriate remedy. ADT has not alleged a claim of unjust enrichment, its claim for breach of fiduciary duty is being dismissed, and it has not identified any money or assets to be put in a trust. See, e.g., Cury v. Mitchell, 688 S.E.2d 825, 828 (N.C. Ct. App. 2010) (finding the plaintiff stated a claim for constructive trust where the "plaintiff alleged that a fiduciary relationship existed, that defendant breached a fiduciary duty, and that defendant was unjustly enriched because of that breach.") Accordingly, ADT's claim for constructive trust will be dismissed.

Like the claim for a constructive trust, ADT has not stated a claim for punitive damages. North Carolina General Statute § 1D-15 explains the standard for punitive damages. Specifically,

> (a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
> 
>   (1) Fraud.
>   (2) Malice.
>   (3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15. However, "[p]unitive damages shall not be awarded against a person solely for breach of contract." Id. Because the only claim remaining is one for breach of contract, ADT's punitive damages claim will be dismissed.

11

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim [Doc. #8] is **GRANTED**, and Plaintiff's Second, Third, Fourth, Fifth, and Sixth Claims for Relief are **DISMISSED.**

This the 21st day of June, 2017.

                                              /s/ N. Carlton Tilley, Jr.
                                       Senior United States District Judge